THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* LEO BRILL, Appellant.

First Department, December 2, 1938.

*Irving Mariash* of counsel [*Hyman Grill* with him on the brief; *Louis Susman*, attorney], for the appellant.

*Sol Boneparth* of counsel [*Herman J. Fliederblum* and *George Tilzer* with him on the brief; *Samuel J. Foley*, District Attorney], for the respondent.

UNTERMYER, J. The defendant was convicted of the violation of section 962 of the Penal Law and sentenced to the New York City Penitentiary. We are of opinion that the People failed to establish any violation of the statute. Section 962 provides in part: " Whenever an agreement for the performance of personal services requires that workmen engaged in its performance shall be paid the prevailing rate of wages, it shall be unlawful for any person, either for himself or any other person, to request, demand, or receive, either before or after such workman is engaged, that such workman pay back, return, donate, contribute or give any part or all of said workman's wages, salary, or thing of value, to any person, upon the statement, representation, or understanding that failure to comply with such request or demand will prevent such workman from procuring or retaining employment, and any person who directly

or indirectly aids, requests or authorizes any other person to violate any of the provisions of this section shall be guilty of a violation of the provisions of this section."

In the present case the only agreement consisted of a written contract between Wheeler Engineering Co., Inc., the general contractor on two buildings then under construction, and Brill Contracting Corporation, a subcontractor for the installation of the plumbing. There does not appear to have been any contract for payment of a prevailing rate of wage between the Brill Contracting Corporation and any union nor with workmen engaged in the performance of the work. The contract with the Wheeler Engineering Co., Inc., contained the following provision: "It is further mutually agreed by the parties hereto that all labor employed under this contract shall be union labor agreeable to all trades engaged at the building."

Upon two grounds, we think no violation of the statute was established, especially if it is remembered that this is a criminal statute which must be strictly construed. The reason for that rule was well expressed in *United States* v. *Capital Traction Co.* (34 App. Cas. [D. C.] 592): "Penal statutes, prohibiting the doing of certain things, and providing a punishment for their violation, should not admit of such a double meaning that the citizen may act upon the one conception of its requirements and the courts upon another."

It must also be remembered that the statute applies throughout all the other communities of the State where varying conditions prevail.

The statute plainly requires as a condition precedent that there shall exist "an agreement for the performance of personal services." This is confirmed by the title: "Refund of wages under personal service contract prohibited." Undoubtedly, the Legislature contemplated a contract of hiring between an employer and his employees or with their union, intended to operate to their advantage. It is the breach of such a contract, by means of a "kick-back," which is the offense specified in the statute.

The contract relied upon as the foundation of the People's case is of an entirely different character. It is not a contract "for the performance of personal services." It is a contract for the installation of plumbing in two apartment buildings in the borough of Manhattan. It is not a contract by the employer with his workmen nor with their union. There is no reason to believe that the provision requiring the employment of union labor was inserted in the contract for the advantage of the workmen, but rather that it was for the protection of the general contractor against inter-

ruptions in the progress of the work. It is the breach of that contract to which neither the workmen nor their representatives were parties, which they could not have enforced, and which could have been abrogated without their consent, that the People seek to use as the basis for the charge. The careful limitation in the statute to personal service contracts is conclusive evidence that it was not intended to include construction contracts or contracts for the manufacture of personal property even though labor might be required in their performance. Upon no well-considered theory can these be described as contracts for personal services.

Unless the statute receives this construction, the words "for the performance of personal services" become entirely superfluous and meaningless. Had the Legislature intended the statute to apply to other contracts, the introductory clause would not have been thus limited and would have referred to *any* contract. Indeed, an amendment introduced in 1938 (Senate bill No. 398), which failed of enactment into law as the result of a veto by the Governor, would have altered the statute by eliminating from the title the words "under personal service contract" and by amending the language of the statute to provide: "Whenever any workman *engaged* to perform personal services shall be promised an *agreed* rate of wages for said services," etc. The fact that this amendment, omitting reference to personal service contracts, was offered and rejected is further evidence that, as first enacted and as it exists today, the statute was intended to apply only where a contract for personal services contains a provision for the payment of the prevailing rate of wages. We are now asked to interpret the statute as if the proposed amendment had been passed.

The difference in the terms of section 962 of the Penal Law and section 220 of the Labor Law, requiring payment of prevailing rate of wages on public work, is also highly significant as disclosing the intention of the Legislature. By subdivision 2 of section 220 of the Labor Law all contracts " which *may involve* the employment of laborers, workmen or mechanics " are required to contain a stipulation that no workmen " in the employ of the contractor, subcontractor or other person doing or contracting to do the whole or a part of *the work contemplated* by the contract " shall be required to work more than a specified number of hours per day. It is provided by subdivision 3 that the wages to be paid to workmen " upon such public works " shall not be less than the prevailing rate of wages and that this prohibition shall apply " to laborers, workmen or mechanics upon any material to be used upon or in connection therewith." The distinction between these statutes, relating to cognate subjects, could hardly have been accidental. It indicates

the intention of the Legislature to require all workmen engaged in the performance of public work to be paid the prevailing rate of wages. Where, however, the contract is between private parties, the Legislature expressly limited the application of section 962 of the Penal Law to cases where the prevailing rate of wage provision was contained in a contract " for the performance of personal services."

Our construction of the statute does not by any means render it futile nor do we limit it to a contract between an individual mechanic and his employer. On the contrary, it will apply, as we think it was particularly intended to apply, where there is a contract between the employer and the union concerning the rate of wages to be paid to " workmen engaged in its performance." The history of this legislation does not suggest that the statute was intended to apply to construction contracts between contractor and subcontractor, neither of whom can be presumed to have made the contract in the interest of workmen, but rather to instances in which the union has entered into a contract with the employer for the benefit of its members, which the employer ought not to be permitted to circumvent by receiving back in secret a portion of the wages paid.

The second ground which makes necessary the reversal of the judgment is the absence of any provision in the contract requiring " the prevailing rate of wages " to be paid. The requirement that " union labor " shall be employed is not equivalent to such a provision. (*People ex rel. Rolf* v. *Coler*, 58 App. Div. 347.) The union rate might be higher or lower than the prevailing rate, nor did the People offer proof that the " union rate " and the " prevailing rate " were the same. Even if we assume the two rates to have been identical in the particular locality where the work here was to be performed, the contract would not have prevented the Brill Contracting Corporation, which had only contracted to employ " union labor," from arranging for any special rate of wage that the union might have been willing to agree on. If it had done so, the Wheeler Engineering Co., Inc., surely could not have maintained an action for breach of the provision of the contract requiring the Brill Contracting Corporation to employ only " union labor." How, then, can it be contended that the provision of the contract which required only the employment of " union labor " required also the payment of " the prevailing rate of wages? " That the statute was not intended to apply to the conditions which existed here is further indicated by the fact that Senate bill No. 398, apparently also intended to extend section 962 of the Penal Law to such situations, failed of enactment into law.

If, as the People contend, we interpret the statute to apply whenever the particular wage specified in the contract happens to coincide with the prevailing rate, the argument that the statute is unconstitutional in failing to provide a standard of behavior which is definite or ascertainable would not be entirely without force. (*United States* v. *Cohen Grocery Co.*, 255 U. S. 81; *Small Co.* v. *Am. Sugar Refining Co.*, 267 id. 233.) It might then fairly be contended that the offense here depends upon a fact, external to the contract, which in turn depends upon a multitude of circumstances incapable of accurate appraisal. Unlike section 220 of the Labor Law (Subds. 3-a and 7), the statute here provides no method for ascertaining in advance the prevailing rate of wages for the kind of labor employed in the locality where the work is to be performed. The People contend that the offense would be committed if the particular wage specified in the contract is eventually found to be the prevailing rate. They concede that it cannot be committed by acceptance of a refund, no matter how aggravated the circumstances, if the prevailing rate happens to be greater or less than the contract rate. The contracting party would thus be placed under the necessity of deciding at his peril the exact wage "prevailing" in any community. If this be the true meaning of the statute, it might not unreasonably be held to be unconstitutional. (*Connally* v. *General Construction Co.*, 269 U. S. 385; *People* v. *Briggs*, 193 N. Y. 457.)

Such contentions lose most of their effectiveness if the statute is limited to cases where the contract contains a provision which in substance requires payment of the prevailing rate of wages, for then it will apply no matter what the prevailing rate may be. (Compare *Campbell* v. *City of New York*, 244 N. Y. 317.) Persons who enter into such contracts will then know, without relation to extraneous circumstances, that the acceptance of a refund under the conditions stated in the statute is a crime. We prefer to preserve the statute and the beneficent purposes for which it was enacted even if, to do so, we somewhat limit its scope. Indeed, it is our duty, if possible, to adopt a construction of the statute which will avoid not only the conclusion that it is unconstitutional "but also grave doubts upon that score." (*United States* v. *Jin Fuey Moy*, 241 U. S. 394; *Tauza* v. *Susquehanna Coal Co.*, 220 N. Y. 259.)

It is true that the defendant, when examined before the trial by an assistant district attorney, testified that according to his interpretation of the written contract he considered that he was required to pay the prevailing rate of wages. But the defendant's interpretation of the unambiguous provisions of the written contract

is insufficient to supply an essential element which the statute prescribes as a condition precedent to the commission of the crime.

We may properly add that we do not find the statute to be unconstitutional in unduly abridging the employer's right to contract, as the appellant contends. The statute does not undertake to prescribe any particular rate of wage, nor does it provide that payment of a lower wage than the parties have agreed upon will constitute a crime. It is directed only against those who, having made a contract for personal services at the prevailing rate, procure a refund under threats, express or implied, that the employee will be discharged. We think it was entirely within the power of the Legislature to forbid an ostensible agreement to pay a prevailing rate, followed by the exaction of a surreptitious refund. The exercise of the police power is not limited to questions affecting the health or morals of the community, but includes power to enact legislation to secure fair trade practices. (*Nebbia* v. *New York*, 291 U. S. 502.) We reverse the judgment only on the ground that no violation of the statute has been shown.

The judgment and order should be reversed, the information dismissed, and the defendant discharged from custody.

MARTIN, P. J., and TOWNLEY, J., concur.

CALLAHAN, J. (concurring). I construe section 962 of the Penal Law to relate to any agreement, the performance of which imposes or carries as a necessary accompaniment thereto the rendition of personal services by workmen, and find that the present contract is within that category. The statute, being one to regulate fair trade practices and prevent frauds and cheats, is not offensive to the provisions of either the Federal or State Constitutions.

I concur in the reversal of the judgment, however, on the ground stated by Mr. Justice UNTERMYER, to the effect that the present contract did not provide for the payment of the " prevailing rate of wages," and that the requirement that " union labor " be employed is not equivalent to such a provision.

COHN, J., concurs.

Judgment and order unanimously reversed, the information dismissed, and the defendant discharged from custody.