Charles Solomon, M.
The issue in this case is the validity of subdivision (a) of section 51 of the New York City Traffic Regulations (July 1, 1958) established by the Commissioner of Traffic under the authority of chapter 46 of the New York City Charter. Defendant contends it is invalid and unconstitutional because of vagueness. The court agrees. The facts as alleged in the complaint are not in dispute. The question is one of law. The Traffic Regulation reads: “ Section 51 (a). Limitations on turning around. The driver of any vehicle shall not turn such vehicle so as to proceed in the opposite direction upon any street in a business district.” The crucial words in this case are “business district”. Section 105 of the New York State Vehicle and Traffic Law (as added by L. 1957, ch. 698, eff. July 1, 1958) “ defines ” these words as follows: “ § 105. Business District. The territory contiguous to and including a highway when within any six hundred feet along such highway there are buildings in use for business or industrial purposes, including but not limited to hotels, banks or office buildings, railroad stations and public buildings, which occupy at least three hundred feet of frontage on one side or three hundred feet collectively on both sides of the highway.” The foregoing “definition” appears under the caption Title II Words and PHRASES DEFINED ARTICLE 10.
There is absolutely nothing in the complaint to apprise the defendant that ‘ ‘ business district ’ as used therein, is “defined” in section 105 of the Vehicle and Traffic Law, or anywhere else, for that matter. It is a matter of common knowledge that there are numerous “ business districts ” throughout the city; sometimes they are called shopping centres. *784 They resemble and differ from each other in many ways. Common experience tells that the expression means different things to different people.
The complaint charges that the defendant on June 6, 1959, at about 11:30 a.m. made a complete U-turn on West 42nd Street, between Fifth and Sixth Avenues, in violation of subdivision (a) of section 51 of the New York City Traffic Regulations. There is not a syllable of proof in the record that the point at which the U-turn was made is in a “ business district ’ ’ as “ defined ” in section 105 of the Vehicle and Traffic Law.
At the very outset, it should be noted that the question here presented is not whether the court as an individual or the New York City Police Department Legal Bureau would colloquially refer to the area as a business district but whether these words, as they appear in the Traffic Regulation and as “ defined ” in section 105 of the Vehicle and Traffic Law, meet the standards and requirements laid down by the courts for clarity, precision and definiteness.
From the record before the court we do not know whether the defendant made the U-turn “so as to proceed in the opposite direction”. He may have made it for another purpose — to park, for instance. It would seem that a motorist making a U-turn and then parking, without proceeding, would not be violating the regulation. There is no proof that the defendant did “proceed”, which is defined in Webster’s International Dictionary as follows: “To move, pass or go, forward or onward; to advance esp. after interruption or from a given point or stage; to continue or renew motion or progress: as, to proceed on a journey ”. And in Funk and Wagnall’s New College Standard Dictionary, we find the word defined as follows: “1. To go on or forward; continue in progress; especially to renew motion or action after rest or interruption.” It does not appear the defendant did any of these things.
The Traffic Regulation here under consideration represents an attempted exercise of the police power which, while necessarily broad and comprehensive, is restricted by constitutional limitations, and does not relieve the public authority responsible for the regulation of the obligation to comply with the clearly defined standards of clarity and precision repeatedly laid down by our courts, including the Supreme Court of the United States.
The regulation in question is penal in nature. A penal law is one which inflicts a penalty for its violation. (See Words and Phrases [Perm, ed.], Vol. 31 A, beginning p. 392.) “A Magistrate’s Court is a criminal court. Its proceedings are judicial.” *785 (People v. Singer and People v. Zelkowitz, 8 A D 2d 161, 162, decided by the Appellate Division, First Department, June 9, 1959.) Since this court takes the position that the regulation in question, notwithstanding the ‘1 definition ’ ’ in the State Vehicle and Traffic Law, is unconstitutional it is well before we proceed any further to note the following: ‘1 Upon the State courts, equally with the courts of the Union rests the obligation to guard, enforce, and protect every right granted or secured by the Constitution of the United States and the laws made in pursuance thereof, whenever those rights are involved in any suit or proceeding before them; for the judges of the State courts are required to take an oath to support that Constitution, and they are bound by it, and the laws of the United States made in pursuance thereof * * * as the supreme law of the land, 1 anything in the Constitution or laws of any State to the contrary notwithstanding. ’ If they fail therein, and withhold or deny rights, privileges, or immunities secured by the Constitution and laws of the United States, the party aggrieved may bring the ease from the highest court of the State in which the question could be decided to this court for final and conclusive determination.” (Robb v. Connolly, 111 U. S. 624, 637. See, also, Irvin v. Dowd, 359 U. S. 394.)
The Magistrates’ Court which is a criminal court and whose proceedings are judicial is embraced in the foregoing. We may need to be reminded that an end, no matter how desirable, can never justify impermissible means. (People v. Dioguardi, 8 A D 2d 426; People v. Tinston, 6 Misc 2d 485, 491.) “ The facts that a case occurs in the Magistrate’s Court does not mean that the legal rights of the defendant are less. No court is out of bounds to the law. Desirable ends do not justify unlawful means.” (People v. Tinston, supra, p. 491.)
In the recent case of Raley v. Ohio (360 U. S. 423, 438), decided June 22,1959, the highest court of the land repeated the warning so often sounded by courts throughout the nation: ‘ ‘ A State may not issue commands to its citizens, under criminal sanctions, in language so vague and undefined as to afford no fair warning of what conduct might transgress them.” The Commissioner of Traffic of the City of New York does not escape this prohibition. Penal statutes should be clear and unambiguous so that he who runs may not only read but readily understand. (People v. Pestronk, 3 Misc 2d 845.) “ Statutes which create crimes must be definite in specifying conduct which is condemned or prohibited * # * ‘ Laws which create crime ought to be so explicit that all men subject to their *786 penalties may know what acts it is their duty to avoid. ’ ” (People v. Grogan, 260 N. Y. 138, 145, citing cases.)
In the very recent case of People v. Caswell-Massey Co. (6 N Y 2d 497) the Court of Appeals reversed the conviction for violation of section 118c. of the New York City Sanitary Code, regulating the dispensing of barbiturates on prescription, holding that the section does not meet the requirements of precision for a criminal statute. The court said (p. 501) : “ We hold that subdivision 3 of section 118c * * * is not clear and explicit enough to meet the requirement that ‘ Statutes which create crimes must be definite in specifying conduct which is condemned or prohibited ’ and that ‘ They must afford some comprehensible guide, rule or information as to what must be done and what must be avoided, to the end that the ordinary member of society [emphasis added] may know how to comply with its requirements ’ (People v. Grogan, 260 N. Y. 138, 145; People v. Vetrie, 309 N. Y. 401, 406; People v. Benc, 288 N. Y. 318; People v. Firth, 3 N Y 2d 472; United States v. Cardiff, 344 U. S. 174). A criminal statute must give ‘ unequivocal warning ’ to citizens, of the rule which is to be obeyed, and, especially as to acts not mala per se, there must be a clear and positive expression of legislative intent to make them criminal (People v. Vetrie, supra, and cases cited therein, 309 N. Y. 405, 406).” In the Grogan case (supra) at page 149 (a traffic infraction was involved) the court described the question as ‘1 small indeed in its consequences, but very important in principle ”.
In People v. Shakun (251 N. Y. 107, 113) the court laid down the following rule of construction for a criminal statute: “ It is well settled that a criminal statute should narrowly be construed; that acts otherwise innocent and lawful, do not become crimes, unless there is a clear and positive expression of the legislative intent to make them criminal.”
And, in People v. Firth (3 N Y 2d 472, 474) Judge Desmond, speaking for the court, said: “ This conviction was not for a crime but for a so-called ‘ traffic infraction ’ (Vehicle and Traffic Law, § 2, subd. 29). However, there are applicable to such prosecutions the rules of the criminal law (People v. Hildebrandt, 308 N. Y. 397). Our question, then, is whether this statute satisfies the requirement that a criminal statute must be sufficiently definite, ‘ clear and positive ’ to give ‘ unequivocal warning ’ to citizens of the rule which is to be obeyed (see cases cited in People v. Vetri, 309 N. Y. 401, 405-406). * * * For validity the statute must be informative on its face.” (Emphasis added.)
*787 Can it be said that this regulation meets the test laid down in People v. Firth (supra) 1 Is it “ informative on its face ” ? The People do not depend on the face of the regulation. They call upon the “definition” in section 105 of the Vehicle and Traffic Law as though to incorporate it, to make it a part of subdivision (a) of section 51 of the Traffic Regulations. If the term “ business district ”, as used in the Traffic Regulation, has a commonly accepted meaning which is explicit and comprehensible to “ the ordinary member of society,” as asserted in the People’s brief, why the “ definition ” ? Does this “ definition ” define ? Punk & Wagnall’s New Standard Dictionary of the English Language contains the following: ‘ ‘ Define. 1. To state precisely the meaning of * * * 3. To fix or determine with precision.” This court does not hesitate to say that as far as the “ ordinary member of society ” is concerned, Tom, Dick and Harry, so to speak, section 105 fails completely “ to state precisely ” or “to fix or determine with precision.” The term “ business district ” as “ defined ” in section 105 may be clear to the legal staff of the Police Department after careful analysis but as far as the “ ordinary member of society ” goes, the sort of person at whom the regulation is principally aimed, it cannot reasonably be said that it is. How is such a person to know that the regulation is not complete on its face? How is he to know that a ‘ ‘ definition ’ ’ of its crncial language is to be found in the Vehicle and Traffic Law? This court can say that for the uninitiated finding one’s way about in the State Vehicle and Traffic Law can be likened to an adventure in exploration.. The very fact that a “definition” was necessary is cogent proof that the words “business district” in the Traffic Regulation are vague, indefinite, imprecise and equivocal; that the regulation does not inform on its face, as mandated by the Court of Appeals in People v. Firth (supra).
The People in their brief rely heavily upon two cases — Kovacs v. Cooper (336 U. S. 77) and Winters v. New York (333 U. S. 507). In the first case the words “ loud and raucous ” appeared in the ordinance there under consideration and the question was whether, under the circumstances of the case, they should be condemned as vague. The dissimilarities between Kovacs and the case at bar aside, it should be noted that the high court divided sharply, 5 to 4, the following Justices dissenting: Black, Douglas, Rutledge and Murphy. The court at page 83 flatly declared that the police power can only be exercised within constitutional limitations. The Winters case (333 U. S. 507, supra) provides no comfort whatever for the *788 People. In this instance, the high court invalidated subdivision 2 of section 1141 of the New York State Penal Law, for vagueness, reversing the conviction of the defendant in the State courts after it had been affirmed by the Appellate Division (268 App. Div. 30) and by the Court of Appeals (294 N. Y. 545). At page 515 (supra) we find the high court again stating the inescapable rule: “ The standards of certainty in statutes punishing for offenses is higher than in those depending primarily upon civil sanction for enforcement. The crime ‘ must be defined with appropriate definiteness.’ ” (Citing cases.)
In People v. Shapiro (4 N Y 2d 597, 601) we find: “ Penal statutes are to be strictly construed against the party seeking their enforcement and in favor of the person being proceeded against # # * No relevancy can be attached to the fact that our construction of the statute may make it difficult in some case to secure * # * punishment ”.
In Village of Stamford v. Fisher (140 N. Y. 187, 191) the court said that where the statute is in restriction of common law, it should receive a strict construction. It must appear that what the defendant did is clearly a violation of law. The traffic regulations are malum prohibitum and in restriction of the common law. (See People v. Daly, 28 N. Y. S. 2d 603, 604.)
The People’s brief cites Matthews v. Matthews (240 N. Y. 28, 34-35) which states the rule “ that it is the duty of this court in construing a statute which is reasonably susceptible of two constructions [emphasis added] * * * to adopt that construction which saves its constitutionality.” There can be no dispute as to the rule. However, it is the position of this court that the Traffic Eegulation is not ‘1 reasonably susceptible of two constructions ’ ’, and it is, therefore, the inescapable duty of this court (Robb v. Connolly, supra, p. 637) “ to guard, enforce, and protect every right granted or secured by the Constitution of the United States and the laws made in pursuance thereof, whenever [emphasis added] these rights are involved in any [emphasis added] suit or proceeding ” before it.
The People contend the regulation itself provides a ‘ ‘ measurable ’ ’ guide and that it is “ clear, precise and measurable. ’ ’ This word “ measurable ” under the circumstances is intriguing in its implications. Do the People contend not only that the defendant should have known of the “ definition ” in section 105 of the Vehicle and Traffic Law, but that he could or should have measured the area in which the turn was made for the purpose of ascertaining whether it came within the terms of the aforesaid “ definition”?
*789 In the recent case of People v. Dio guar di (supra, p. 434) the Appellate Division, First Department, held: “a penal statute [should not] admit of such a double meaning that a citizen may act upon one conception of its requirements and the courts on another. (People v. Brill, 255 App. Div. 452, 454; United States v. Capital Traction Co., 34 App. Cas. [D. C.] 592).” Mandates addressed to “ the ordinary member of society ” should not be legal booby traps. To cavalierly brush aside the fundamental rule of law here involved amounts to the denial of a constitutional right. At the conclusion of the People’s case (tried Aug. 7, 1959) the defendant moved to dismiss the complaint upon several grounds, including the following: that the People have failed to prove a prima facie case; that the complaint is insufficient on its face as a matter of law; that the Traffic Regulation is invalid because it is vague, indefinite and imprecise. Decision was reserved.
The motion is now granted.