Benjamin Gassman, J.
The People appeal from a judgment rendered [Aug. 7, 1959] hy the Magistrates’ Court [Chaeles Solomon, J.; opinion 20 Misc 2d 782], granting the defendant’s motion, made at the close of the People’s case, to dismiss the complaint, for the reason, as stated in the opinion below, that subdivision (a) of section 51 of the New York City Traffic Regulations is vague, indefinite and imprecise and, therefore, unconstitutional.
The defendant was charged with having made a U-turn on West 42nd Street between Fifth Avenue and Avenue of the Americas, in violation of subdivision (a) of section 51 of the New York City Traffic Regulations, which provides that “ the driver of any vehicle shall not turn such vehicle so as to proceed in the opposite direction upon any street in a business district.”
At the trial, the police officer testified that on June 6, 1959, at 11:30 a.m. he observed the defendant operating a Ford sports car easterly on West 42nd Street, between Fifth Avenue and Avenue of the Americas and that he made a U-turn in the middle of the block. He stated on cross-examination that there are no signs on that block “denoting no U-turn”. However, he testified that on that street were a number of stores, including Stern’s Department Store.
At the close of the People’s case, defendant moved to dismiss the complaint and the court reserved decision on that motion. Defendant then rested and again moved to dismiss the complaint. The court again reserved decision and later, in a long opinion (People v. Kassover, 20 Misc 2d 782, 783, 784) granted the motion made at the end of the People’s case, holding that subdivision (a) of section 51 of the New York City Traffic Regulations was unconstitutional on the ground that “ There is absolutely nothing in the complaint to apprise the defendant that ‘ business district ’, as used therein, is 1 defined ’ in section 105 of the Vehicle and Traffic Law, or anywhere else, for that matter ”, and that “ From the record before the court we do not know whether the defendant made the U-turn ‘ so as to proceed in the opposite direction ’. He may have made it for another purpose — to park, for instance. It would seem that a motorist making a U-turn and then parking, without proceeding, would not be violating the regulation.” The court below then concluded that the language of the regulation in question was “ vague, indefinite and imprecise ” (p. 789) and, therefore, unconstitutional.
A criminal statute must, of course, be sufficiently definite, clear and positive to give unequivocal meaning to citizens of the rule to be obeyed. (People v. Firth, 3 N Y 2d 472, 474.) *1082 Statutes which create crimes must be definite, specifying those acts which are prohibited. (People v. Grogan, 260 N. Y. 138.) A penal statute must afford some comprehensive guide or rule as to what must be done and what must be avoided, so that an ordinary member of society may know how to comply with the law, (People v. O’Gorman, 274 N, Y. 284.)
Because there was no sign on the street in question prohibiting U-turns, a driver making such a U-turn on that street could be convicted only if the traffic regulation in question apprised him of the fact that such a turn was prohibited by law. The question presented is whether the language in subdivision (a) of section 51 of the Traffic Regulations is definite in specifying conduct which is prohibited. Does it give ‘(unequivocal warning ’ ’ to citizens of the rule which is to be obeyed?
The court below held that the language in that regulation was vague and indefinite and that it did not meet the test of being “ informative on its face ” (p. 786), because while it prohibited a U-turn on a street in a “ business district ”, it did not, on its face define that term. In order to enable the driver of a vehicle to determine whether the street in question was in a lf business district ”, he would have to refer to section 105 of the Vehicle and Traffic Law for a definition of that term. “ How ”, asked the court below, “ is such a person to know that the regulation is not complete on its face ? How is he to known that a 1 definition ’ of its crucial language is to be found in the Vehicle and Traffic Law? ” (People v, Kassover, supra, p. 787.) The court below then concluded that “ the very fact that a ‘ definition ’ was necessary is cogent proof that the words ‘ business district ’ in the Traffic Regulation are vague, indefinite, imprecise and equivocal; that the regulation does not inform on its face, as mandated by the Court of Appeals in People v. Firth (supra).”
The fact that language in a statute or regulation may require reference to “ definitions ” in that or in a related statute, does not necessary render such statute or regulation vague or indefinite. Nor does the fact that a person would have to look to section 105 of the Vehicle and Traffic Law for a definition of the term “ business district ” used in the Traffic Regulation make the regulation vague. After all, one is presumed to know the law and that includes traffic regulations as well. A driver of a vehicle is chargeable with knowledge that, regardless of the absence of a sign prohibiting a U-turn on a certain street, if the street in question is, in fact, in a business district, such turns are prohibited by law. Certainly a driver, operating a vehicle on West 42nd Street? between Fifth Avenue and Avenue *1083 of the Americas, could not help hut conclude that it is in a “ business district ”. West 42nd Street between those two avenues is one of the longest streets in the City of New York. It is bounded on the south by the New York Public Library and by Bryant- Park, and on the north by a number of large office buildings, a large department store, a large Woolworth store and a great number of other stores, frequented by thousands of shoppers daily. It is one of the heaviest-travelled crosstown arterial streets, used by busses, taxicabs, private automobiles and trucks. One cannot shut his eyes to the evident fact that it is one of the busiest shopping streets in Manhattan, on which there are “ buildings in use for business and industrial purposes * * * which occupy at least three hundred feet of frontage on one side ” (Vehicle and Traffic Law, § 105). It is, without question a “ business district ”.
Nor could a person, operating a vehicle in any other section of the City of New York, where the physical characteristics are the same as or similar to those on West 42nd Street, claim that he was unaware that it was a street in a “ business district ’ ’, and therefore, a street on which U-turns are prohibited.
The regulation in question was promulgated by the Commissioner of Traffic of the City of New York under authority granted by section 1640 of the Vehicle and Traffic Law which provides that a city may ‘ ‘ by local law, ordinance, order, rule or regulation: * * * prohibit or regulate the turning of vehicles * * * at intersections or other designated locations.” Subdivision 15 of that section empowers a city to “ adopt such additional reasonable local laws, ordinances, orders, rules and regulations with respect to traffic as local conditions may require subject to the limitations contained in the various laws of this state ”. Subdivision (a) of section 1642 of the Vehicle and Traffic Law provides that “ in addition to the other powers granted by this article, the legislative body of any city having a population in excess of one million, may by local law, ordinances, order, rule, regulation or sanitary code provision, prohibit, restrict or regulate * * * turning of vehicles.” Subdivision (a) of section 51 of the New York City Traffic Regulations is clear in its prohibition against making U-turns on any street in a business district. We do not agree with the learned court below that ‘ ‘ a motorist making a U-turn and then parking, without proceeding, would not be violating the regulation ” (p. 784). A driver operating a vehicle in one directioh and making a complete U-turn, even if only for the purpose of parking on the opposite side of the street, would, at least for some distance, “ proceed in the opposite direction ” before park *1084 ing and would therefore be in violation of the regulation. The construction applied by the court below to the words “so as to proceed in the opposite direction ’ ’ as meaning that one who makes such a U-turn violates the regulation only if he continues to proceed in the opposite direction, is entirely too narrow. The regulation was intended to prevent the blocking or stoppage of traffic by any driver making a U-turn on a street in a business district, and who thereby would stop or delay traffic in both directions and, as we pointed out, even had such driver made the U-turn for the purpose of parking on the opposite side of the street, he would still, at least for some part of the time, be proceeding in the opposite direction.
We therefore conclude that the language of subdivision (a) of section 51 of the Traffic Regulations is sufficiently clear to prohibit a U-turn for any purpose on any street in a business district.
Notwithstanding the foregoing conclusion, the appeal must, nevertheless, be dismissed for the following reasons:
Section 518 of the Code of Criminal Procedure provides: ‘1 An appeal may be taken by the people as of right in the following cases * * * 3. From an order of the court, made at any stage of the action, setting aside or dismissing the indictment on a ground other than the insufficiency of the evidence adduced at the trial ”.
This section speaks of an “ order ”, which is not the same as a “ judgment ”. A demurrer is sustained by “an order ” entered upon the minutes. (Code Grim. Pro., § 326.) A trial is concluded by a “ judgment ’ ’ either of conviction or acquittal. When, therefore, a full trial is had, the judgment rendered is one on the merits. It is not an order ‘ ‘ dismissing the indictment on a ground other than the insufficiency of the evidence adduced at the trial ”.
While the provisions of section 518 of the Code of Criminal Procedure refer to “indictments”, they have been held to apply to orders dismissing “informations” as well. (People v. Levenstein, 309 N. Y. 433, 4.35; People v. Hammerstein, 150 App. Div. 212; People v. Firth, 157 App. Div. 492.) Hence, if this case is one of those described in section 518 of the code, this appeal may be heard by us, otherwise, it cannot.
The question presented is whether this appeal is from a judgment of acquittal after a trial on the merits, or whether it is an appeal from an order dismissing the charge “on a ground other than the sufficiency of the evidence adduced at the trial ”. If it is the former, the appeal would have to be dismissed, for the defendant having been tried and acquitted, *1085 cannot be retried. (People v. Goldfarb, 152 App. Div. 87 v. affd. 213 N. Y. 664.) If it is in the latter category, the appeal would lie.
The record discloses that, following the defendant’s arraignment, there was a full trial, at the conclusion of which, both sides having rested, the defendant moved to dismiss the complaint on the ground that the People failed to prove the guilt of the defendant beyond a reasonable doubt. The court, after reserving decision on the motion made at the end of the People’s case, later granted it and acquitted the defendant. The grounds for the acquittal, set forth in the court’s opinion, did not give the People a right to appeal, as the acquittal followed a full trial. Were we to reverse the judgment and order a new trial, the defendant could well claim that he was being subjected to double jeopardy. (Code Grim. Pro., § 9.)
“It is not necessary in order that a person may avail himself of the constitutional right not to be placed twice in jeopardy for the same offense that the prior trial shall have resulted in a valid judgment either of conviction or acquittal. It is sufficient if the prisoner was actually placed in jeopardy in that he was in danger of having a valid judgment pronounced as the result of the trial ”. (People ex rel. Meyer v. Warden, 269 N. Y. 426, 429.) The general rule in this State is that if the court has jurisdiction and all prior proceedings are valid, a defendant is placed in jeopardy when he has been arraigned and pleaded to a valid charge, the trial was started and evidence given. (King v. People, 5 Hun 297; People ex rel. Stabile v. Warden, 202 N. Y. 138.)
Hence, while in our opinion, the court below was in error in granting the defendant’s motion to dismiss on the grounds set forth in the opinion below, there is nothing we can do about it, for the reason that the ruling was made at the end of the entire case. The situation here is precisely akin to, that in People v. Reed (276 N. Y. 5) where the Court of Appeals, while recognizing the fact that the trial court erred in dismissing an indictment for insufficiency, nevertheless affirmed an order dismissing the appeal taken by the People, on the ground that the appeal was not authorized by section 518 of the Code of Criminal Procedure. The court there said (pp. 11-12, 13): “If the defendants had demurred to the indictment in the first place the ruling that the judge made in this case, to the effect that the indictment did not state a crime, could have been reviewed by the Appellate Division and then by the Court of Appeals * * * There was no demurrer in this case, although the motion to dismiss the indictment in reality amounted to the *1086 same thing * * * The order granting the motion, therefore, made at the end of the case dismissing the indictment as being insufficient for the reasons stated, even though error, bars and forecloses the People from appealing to any of the appellate courts. The Appellate Division was, therefore, correct in dismissing the appeal.”
The right to appeal is a creature of the statute and is governed by the statute. (People v. Gersewitz, 294 N. Y. 163, 168.) As we stated in People v. Halbreich (18 Misc 2d 473, 475-476): ‘ ‘ The statutory provisions for appeal to the Appellate Part of this court are set forth in sections 40 and 41 of the New York City Criminal Courts Act and sections 517 and 518 of the Code of Criminal Procedure. An examination of these references discloses no specific provision for appeal by the People in a case where the defendant was discharged and the complaint dismissed after trial was begun.”
Accordingly, this appeal must be dismissed.
We deem it important, however, to call to the attention of the lower court the admonition contained in People v. Reed (supra, p. 9) that “while the defendant under our criminal procedure is entitled to the benefit of every reasonable doubt on the facts, the People should be entitled to any reasonable doubt a trial judge may have on the law for, if he makes a mistake on the law, the People have no opportunity or method of reviewing his ruling, as strange as it may seem to us in this enlightened day ’ ’. This is especially true in a case where the trial court entertains a reasonable doubt as to the constitutionality of a statue.
Murtagh, P. J., and Bingel, J., concur.
Appeal dismissed.