935 A.2d 421

**Ronald Robert ALLEN**

**v.**

**STATE of Maryland.**

**No. 5, Sept. Term, 2007.**

Court of Appeals of Maryland.

Nov. 8, 2007.

Bell, C.J., concurred in the result only.

Allison M. Sayers, Asst. Public Defender (Nancy S. Forster, Public Defender, on brief), Baltimore, for petitioner/cross-respondent.

Carrie J. Williams, Asst. Atty. Gen. (Douglas F. Gansler, Atty. Gen. of Maryland, on brief), Baltimore, for respondent/cross-petitioner.

Argued before BELL, C.J., RAKER, HARRELL, BATTAGLIA, GREENE, ALAN M. WILNER (Retired, specially assigned), and DALE R. CATHELL (Retired, specially assigned), JJ.

**HARRELL, J.**

This case reaches the Court through our grant of a Petition for Writ of Certiorari filed by Ronald Robert Allen (Petitioner) seeking review of a judgment of the Court of Special Appeals finding no error with the evidentiary sufficiency of his conviction of unauthorized use of a motor vehicle under Maryland Code, Criminal Law Article § 7–203 (2002). We also granted the State's Cross–Petition to consider whether the Maryland Legislature, in the course of its 2002 recodification of the substantive statutory criminal law, focusing particularly on Criminal Law Article ("CL") § 7–203, added an element to the crime of unauthorized use of a vehicle beyond that previously required under the predecessor statute.[1] We shall hold

---

1. The relevant statute, as revised in 2002 and extant at all relevant times in the present case, provides:

CL § 7–203. Unauthorized removal of property.

(a) *Prohibited.*—Without the permission of the owner, a person may not enter or be on the premises of another, and take and carry away from the premises or out of the custody or use of the other, or the other's agent, or a governmental unit any property, including:

(1) a vehicle;

(2) a motor vehicle;

(3) a vessel; or

(4) livestock.

(b) *Penalty*—A person who violates this section is guilty of a misdemeanor and on conviction:

(1) is subject to imprisonment for not less than 6 months and not exceeding 4 years or a fine not less than $50 and not exceeding $100 or both; and

(2) shall restore the property taken and carried away in violation of this section or, if unable to restore the property, shall pay to the owner the full value of the property.

(c) *Prohibited defense*—It is not a defense to this section that the person intends to hold or keep the property for the person's present use and not with the intent of appropriating or converting the property.

Prior to the 2002 recodification, the relevant statute, codified at Md. Code, Article 27 § 349 (1957), read:

§ 349. Unauthorized use of livestock, boat, or vehicle.

Any person or persons, his or their aiders or abettors who shall enter, or being upon the premises of any other person, body corporate or politic in the State, shall, against the will and consent of said person or persons, body corporate or politic or their agents, wilfully take and carry away any horse, mare, colt, gelding, mule, ass, sheep, hog, ox or cow, or any carriage, wagon, buggy, cart, boat, craft, vessel, or any

that the Legislature in its 2002 recodification did not add a new requirement such that a defendant must be shown to have been on the real property from where a vehicle is taken and to have participated in the taking of the vehicle in order to be convicted of unauthorized use under CL § 7–203. We further shall hold that the record evidence, and reasonable inferences drawable therefrom, were legally sufficient to convict Petitioner of unauthorized use. As a result, we shall affirm the judgment of the Court of Special Appeals.

## I.

Ronald Robert Allen was tried in the Circuit Court for Prince George's County on three counts of theft and one count of unauthorized use of a motor vehicle. After a two-day trial, a jury convicted Allen under Maryland Code, Criminal Law Article § 7–203 (2002), of the crime formally entitled "unauthorized removal of property," but more commonly referred to as "unauthorized use" of an automobile. The parties do not dispute the direct facts.

Early on 28 October 2003, General Motors delivered several new Hummer motor vehicles to Moore Cadillac's Virginia dealership. While normally the delivery driver dropped the

---

other vehicle including motor vehicle as defined in the laws of this State relating to such, or property whatsoever, or take and carry away out of the custody or use of any person or persons, body corporate or politic, or his or their agents, any of the above-enumerated property at whatsoever place the same may be found, shall upon conviction thereof in any of the courts of this State having criminal jurisdiction be adjudged guilty of a misdemeanor, and shall restore the property so taken and carried away, or, if unable so to do, shall pay to the owner or owners the full value thereof, and be fined not less than fifty nor more than one hundred dollars, or be imprisoned in the county or city jail, or the house of correction, for not less than six months nor more than four years, or be both fined and imprisoned as aforesaid, in the discretion of the court, although it may appear from the evidence that such person or persons, his or their aiders and abettors, took and carried away the property or any portion of the same enumerated in this section, for his or their present use, and not with the intent of appropriating or converting the same. The provisions of Article 52, § 13, shall not apply to this section.

associated paperwork and two sets of keys for each Hummer into a night drop slot at the dealership, on this occasion he noticed that one of the Hummers, a gray-colored one, had only one set of keys. On 5 November 2003, when a prospective purchaser inquired about that Hummer, employees of the dealership could not locate it and reported it stolen.

The vehicle was located when Officer Gerald Caver of the Prince George's County Police Department noticed a gray Hummer, driven by Petitioner, during his patrol in the County on 5 December 2003. While checking on his in-board computer vehicle tag numbers in search of stolen tags, a "hit" came back for the Hummer, leading him to stop the vehicle. Officer Caver checked the vehicle identification number with the dispatcher and confirmed the vehicle was the one reported stolen from Moore Cadillac's Virginia dealership. A single set of manufacturer's original keys were in the vehicle.

The grand jury charged Petitioner with felony theft, motor vehicle theft, unauthorized use of a motor vehicle,[2] and misdemeanor theft of the license tags. The State *nol prossed* the misdemeanor theft count at the close of its case-in-chief at trial. Allen moved for a judgment of acquittal on the other three charges. With regard to the count of unauthorized use, he argued that the State failed to establish the required elements, and specifically that the State did not offer any evidence that he entered on the property of the Virginia dealership and took the Hummer off its lot. His motion for acquittal was denied.

In his defense, Allen and his mother testified. His mother testified that Allen was in Florida when the Hummer disappeared from Moore Cadillac. Petitioner testified that he did not take the Hummer from the dealership and did not know that the Hummer was stolen. He claimed that the Hummer belonged to an acquaintance, Marcus Robinson, from whom he

---

2. The State later moved to amend the charge of "unauthorized use of a motor vehicle" to a charge of "unauthorized control over property." Upon Petitioner's objection, the court denied the State's motion on the ground that the proposed amendment was substantive.

borrowed the vehicle on 5 December 2003 to go to breakfast. Marcus Robinson did not testify. At the close of all the evidence, Allen renewed his motion for judgment of acquittal. The court denied the motion and the case was sent to the jury.

The judge's instructions to the jury included ones consistent with the Maryland Pattern Instructions on the presumption of innocence, reasonable doubt, and the requirement of impartiality. The judge also instructed the jury that it

[i]s your duty to decide the facts and apply the law to those facts.

. . . .

In evaluating the evidence, you should consider it in the light of your own experiences. You may draw any reasonable inferences or conclusions from the evidence that you believe to be justified by common sense and your own experiences.

. . . .

There are two types of evidence, direct and circumstantial. The law makes no distinction between the weight to be given to either direct or circumstantial evidence.

No greater degree of certainty is required of circumstantial than of direct evidence. In reaching a verdict, you should weigh all of the evidence presented whether direct or circumstantial. You may not convict the defendant unless you find that the evidence when considered as a whole establishes guilt beyond a reasonable doubt.

You are the sole judges of whether the witness should be believed. In making this decision, you may apply your own common sense and every day experiences.

. . . .

You have heard testimony about Marcus Robinson who was not called as a witness in this case. If a witness could have given important testimony on an issue in this case and if the witness was peculiarly within the power of the defendant to produce but was not called as a witness by the defendant and the absence of that witness was not sufficiently accounted for or explained, then you may decide that

the testimony of that witness would have been unfavorable to the defendant.

After explaining "intent" to the jury, the judge identified the elements needing to be proven in order to convict as to each of the three charges. With regard to the charge of "unauthorized removal of property" (unauthorized use), the judge stated:

Unauthorized removal of property. Without the permission of the owner, a person may not enter or be upon the premises of another and take and carry away from the premises or out of the custody or use of the other or the other's agent or a government unit any property including a motor vehicle.

No exceptions were taken to this instruction.

The jury found Allen guilty of one count of unauthorized use. He was sentenced to four years' imprisonment, all but 90 days suspended, with three years' probation upon release from incarceration.

On appeal to the Court of Special Appeals, Allen argued that the evidence presented at trial was not sufficient to support a conviction of unauthorized use under CL § 7–203. *Allen v. State*, 171 Md.App. 544, 551, 911 A.2d 453, 457 (2006). Specifically, he pointed to the language of the statute, last revised in 2002, asserting that the plain language requires proof both that a person, *sans* permission, entered or was present on the real property where the motor vehicle was taken and participated in the taking of such property from the premises or out of the custody or use of the owner. *Id.* In this case, the evidence did not establish sufficiently either that he was present at the Virginia dealership and removed the Hummer or, when discovered behind the wheel, that he knew that the Hummer was stolen. *Id.* In reply, the State argued that the 2002 revision of CL § 7–203 did not work a substantive change in the elements of the offense from the predecessor statute and case law interpreting it and that it only was necessary to prove that Allen participated in the continued use of the Hummer under circumstances manifesting an intent to deprive the true owner of possession. *Id.*

In its reported opinion, the intermediate appellate court traced the history of the unauthorized use statute. *Id.* at 551–54, 911 A.2d at 457–59. The court detailed the statute's several revisions and the case law interpreting the iterations. *Id.* According to the court, the case law decided prior to the 2002 revision supported the State's arguments. *Id.* at 554, 911 A.2d at 459. The court noted, however, that no on-point cases had been decided since the 2002 revision and that the revision worked a substantive change in the statute's meaning from that version existing before 2002. *Id.* Specifically, the court held that, under a plain meaning reading, the statute now requires proof both of entry upon the premises of another by a defendant and the unlawful taking and carrying away of property. *Id.* at 557, 911 A.2d at 460. Based on its view of the current statute, the court next considered the sufficiency of the evidence supporting Allen's conviction. *Id.* at 561, 911 A.2d at 463. The court noted Maryland's recognition that "a jury may infer, from the unexplained possession of recently stolen goods, that the possessor is the thief." *Id.* at 562, 911 A.2d at 463 (citing *Painter v. State*, 157 Md.App. 1, 12, 848 A.2d 692, 698–99 (2004)). Our appellate brethren concluded that the passage of one month between the discovery that the Hummer was missing from the Virginia dealership and the arrest of Allen behind the wheel of the vehicle in Prince George's County did not destroy the probative effect of that permissible inference. *Id.* at 562, 911 A.2d at 463–64. The court noted that the jury was free not to credit Allen's testimony and alibi evidence and also to consider that he did not call Robinson to testify in corroboration of his tendered defense. *Id.* at 562–63, 911 A.2d at 463–64. The intermediate appellate court had "no difficulty concluding that the State presented evidence from which a jury rationally could find that Appellant violated CL § 7–203." [3] *Id.* at 561, 911 A.2d at 463.

---

**3.** The Court of Special Appeals, on its initiative, considered whether Maryland had jurisdiction to prosecute Allen for violating CL § 7–203

Before us, as before the intermediate appellate court, Allen asserts that the State failed to produce sufficient evidence to support his conviction of "unauthorized use" of a motor vehicle. Agreeing with the intermediate appellate court's interpretation of CL § 7–203, Petitioner claims that the evidence presented at trial by the State failed to place him on the car dealership's property in Virginia or to show that, when found operating it, he knew that the Hummer was stolen. The State, in its cross-petition, asks that we consider whether the 2002 revision to CL § 7–203 affected a substantive change by adding a new element or elements to the offense of unauthorized use. Even were we to conclude that such a substantive change occurred, the State urges that the evidence was sufficient as a matter of law to support the jury's verdict.

## II.

The history and interpretation of the "unauthorized use" statute is of apical importance to proper analysis of this case. In 1880, the Legislature created the progenitor of this crime when it enacted a statute establishing the misdemeanor crime of larceny of the use of any horse or other animal or any carriage or other vehicle. *Wright v. Sas*, 187 Md. 507, 511, 50 A.2d 809, 810 (1947). Over time, changes were made to the statute, through recodifications and targeted revisions. *Id.* at 511, 50 A.2d at 810. The controlling text of the statute, however, was changed very little. *Id.* The penultimate relevant version, prior to the changes made in the 2002 recodification, was Maryland Code Art. 27, § 349, entitled "unauthorized use of livestock, boat, or vehicle." It read in pertinent part:

> Any person or persons, his or their aiders or abettors who shall enter, or being upon the premises of any other person, body corporate or politic in the State, shall, against the will

---

in as much as the Hummer was stolen in Virginia. *Allen v. State*, 171 Md.App. 544, 557–61, 911 A.2d 453, 460–63 (2006). The court concluded that territorial jurisdiction existed because the car obviously was transported into Maryland. *Id.* at 560–61, 911 A.2d at 462–63.

and consent of said person or persons, body corporate or politic or their agents, wilfully take and carry away any . . . motor vehicle . . . , or take and carry away out of the custody or use of any person or persons, body corporate or politic, or his or their agents, any of the above enumerated property at whatsoever place the same may be found, shall upon conviction thereof . . . be adjudged guilty of a misdemeanor.

As noted by the Court of Special Appeals, this iteration of the crime of unauthorized use had four elements, "(1) an unlawful taking; (2) an unlawful carrying away; (3) of certain designated personal property; (4) of another." *Allen v. State*, 171 Md.App. 544, 552, 911 A.2d 453, 458 (2006) (citing *In re Lakeysha P.*, 106 Md.App. 401, 411, 665 A.2d 264, 269 (1995)). This Court's jurisprudence interpreted the unauthorized use statute in the disjunctive, holding that it contemplated two ways of satisfying these elements. *Thomas v. State*, 277 Md. 257, 269, 353 A.2d 240, 247–48 (1976). First, one may enter the premises of another and take property away. *Id.*, 277 Md. at 269, 353 A.2d at 248. Second, one may take property from wherever it is located. *Id.* As to this second means of committing the unauthorized use offense, this Court and the Court of Special Appeals have affirmed many convictions, notwithstanding the absence in those records of evidence linking the defendant with the original taking of the property, because admitted evidence supported a finding that a defendant had the intent to deprive the owner of possession. *See Lee v. State*, 240 Md. 160, 213 A.2d 503 (1965); *Spence v. State*, 224 Md. 17, 165 A.2d 917 (1960); *Anello v. State*, 201 Md. 164, 93 A.2d 71 (1952); *Banks v. State*, 2 Md.App. 373, 234 A.2d 798 (1967); *Johnson v. State*, 2 Md.App. 486, 236 A.2d 41 (1967).

The 2002 (and current) version of the unauthorized use statute, entitled "unauthorized removal of property," is codified at Criminal Law Article § 7–203 of the Maryland Code. The recodification of the substantive criminal laws, of which § 7–203 was apart, came about as the result of a four year effort to reorganize and simplify the criminal code, consummated by the adoption of Chapter 26 of the Acts of 2002.

*Allen v. State,* 171 Md.App. 544, 551–52, 911 A.2d 453, 457 (2006); GENERAL REVISOR'S NOTE TO ARTICLE, MD.CODE CRIM. LAW Art. (2002). As the general revisor's note recognizes:

[T]he principle function of a Code is to reorganize the statutes and state them in simpler form. Consequently any changes made in them by a Code are presumed to be for the purpose of clarity rather than change of meaning. Therefore, even a change in the phraseology of a statute by a codification thereof will not ordinarily modify the law, unless the change is so radical and material that the intention of the Legislature to modify the law appears unmistakably from the language of the Code.

GENERAL REVISOR'S NOTE TO ARTICLE, MD.CODE CRIM. LAW ART. (2002) (*quoting Welch v. Humphrey,* 200 Md. 410, 417, 90 A.2d 686, 689 (1952)). The revised Criminal Law Article is organized by Title, setting out various crimes, including "Title 7. Theft and Related Crimes." Title 7 is further broken into Subtitles and Parts. Notably, "unauthorized use of property," or § 7-203 "unauthorized removal of property" as it is called formally, falls within Part II, "Unlawful Use of Goods." It reads in pertinent part:

(a) *Prohibited.*—Without the permission of the owner, a person may not enter or be on the premises of another, and take and carry away from the premises or out of the custody or use of the other, or the other's agent, or a governmental unit any property, including ... a motor vehicle. . . .

The annotation to this section in the bound volume of the Code also includes a Revisor's note stating that "[t]his section is new language derived without substantive change from former Art. 27, § 349." When the Legislature enacted this and the other sections of Chapter 26 of the Acts of 2002, all of the above language, including the Revisor's notes appeared in the legislation. In addition and of more meaningful import, the session law included Section 13, which read, "AND BE IT FURTHER ENACTED, That it is the intention of the General Assembly that, except as expressly provided in this Act, this Act shall be construed as a nonsubstantive revision, and may

not otherwise be construed to render any substantive change in the criminal law of the State."

## III.

On the issue of the meaning of CL § 7–203, the Court of Special Appeals's interpretation of the statute "enjoys no deferential appellate review." *Helinski v. Harford Memorial Hospital, Inc.,* 376 Md. 606, 614, 831 A.2d 40, 45 (2003). We review the issue *de novo.* A review of the question regarding the sufficiency of the evidence in a jury trial requires us to ask whether, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Rivers v. State,* 393 Md. 569, 580, 903 A.2d 908, 915 (2006).

## IV.

### A.

The first issue we encounter is whether, when the Legislature enacted Chapter 26 of the Acts of 2002, it intended to work a substantive change in the elements of the crime of unauthorized use. This Court often has had occasion to consider the impact of recodifications on the meaning of included statutory provisions vis a vis prior iterations of the relevant statutes. "When a substantial part of an Article is revised, 'a change in the phraseology of a statute as part of a recodification will ordinarily not be deemed to modify the law unless the change is such that the intention of the Legislature to modify the law is unmistakable.'" *Comptroller of the Treasury v. Blanton,* 390 Md. 528, 538, 890 A.2d 279, 285 (2006) (quoting *Rettig v. State,* 334 Md. 419, 427, 639 A.2d 670, 674 (1994)); *see also Pye v. State,* 397 Md. 626, 634, 919 A.2d 632, 637 (2007). Furthermore, "[r]ecodification of statutes is presumed to be for the purpose of clarity rather than change of meaning and, thus, even a change in the phraseology of a statute by a codification will not ordinarily modify the law unless the change is so radical and material that the intention

of the Legislature to modify the law appears unmistakably from the language of the Code." *Blanton,* 390 Md. at 538, 890 A.2d at 285 (quoting *Md. Div. of Labor and Indus. v. Triangle Gen. Contractors, Inc.,* 366 Md. 407, 422, 784 A.2d 534, 543 (2001)); *see also Tipton v. Partner's Mgmt. Co.,* 364 Md. 419, 773 A.2d 488 (2001); *Riemer v. Columbia Med. Plan., Inc.,* 358 Md. 222, 747 A.2d 677 (2000); *Blevins & Wills v. Baltimore County, Maryland,* 352 Md. 620, 724 A.2d 22 (1999); *Giant Food, Inc. v. Dep't of Labor,* 356 Md. 180, 738 A.2d 856 (1999); *DeBusk v. Johns Hopkins Hosp.,* 342 Md. 432, 677 A.2d 73 (1996); *Rohrbaugh v. Estate of Stern,* 305 Md. 443, 505 A.2d 113 (1986); *Duffy v. Conaway,* 295 Md. 242, 455 A.2d 955 (1983); *In Re Special Investigation No. 236,* 295 Md. 573, 458 A.2d 75 (1983); *Office & Prof. Employees Int'l Union v. MTA,* 295 Md. 88, 453 A.2d 1191 (1982); *Bureau of Mines v. George's Creek,* 272 Md. 143, 321 A.2d 748 (1974); *Welch v. Humphrey,* 200 Md. 410, 90 A.2d 686 (1952).

■■■ The Legislature is presumed to be aware of our prior holdings when it enacts new legislation and, where it does not express a clear intention to abrogate the holdings of those decisions, to have acquiesced in those holdings. *Pye,* 397 Md. at 635–36, 919 A.2d at 637 (2007); *Plein v. Dep't of Labor,* 369 Md. 421, 437, 800 A.2d 757, 767 (2002); *The Pack Shack, Inc. v. Howard County,* 371 Md. 243, 257, 808 A.2d 795, 803 (2002); *Jones v. State,* 362 Md. 331, 337–38, 765 A.2d 127, 130–31 (2001); *Williams v. State,* 292 Md. 201, 210, 438 A.2d 1301, 1305 (1981). Thus, there is a strong presumption that the Legislature did not intend, in recodifying the unauthorized use statute as part of its general recodification of the State's criminal laws in 2002, to change the elements or judicial interpretation of that statute from that previously rendered.

Overcoming that presumption in this case, the Court of Special Appeals held, and Petitioner embraces, the notion that application of the plain meaning rule to the 2002 version of CL § 7–203 requires that both "presence on the premises of another *and* taking and carrying away property are required elements of the offense." *Allen,* 171 Md.App. at 555, 911 A.2d

at 459 (2006) (emphasis in original). The court concluded, therefore, that the Legislature effectively eliminated the possibility that a defendant could be convicted of unauthorized use without proof of his or her presence on the premises of the initial theft. *Id.* at 555–56, 911 A.2d at 459–60. In holding that the 2002 statute contained no ambiguity, the Court of Special Appeals declined to consider the legislative history as an aid in construing the statute, and thus took no account of the Revisor's note to the statute nor even alluded to the Session law. *Id.* at 556, 911 A.2d at 460.

 As the Court of Special Appeals aptly stated here, in construing and applying any statute, a court must "discern the actual intent of the legislature in enacting it." *Id.* at 554, 911 A.2d at 459 (citing *Chow v. State,* 393 Md. 431, 443–44, 903 A.2d 388, 395 (2006)). In that regard, it is well settled that the purpose of the plain meaning rule is to ascertain and carry out the real legislative intent. *See, e.g., Dep't of Health & Mental Hygiene v. Kelly,* 397 Md. 399, 419, 918 A.2d 470, 482 (2007); *Mayor and Town Council of Oakland v. Mayor and Town Council of Mountain Lake Park,* 392 Md. 301, 316, 896 A.2d 1036, 1045 (2006); *In re Anthony R.,* 362 Md. 51, 57, 763 A.2d 136, 139 (2000). Beyond concurring with this threshold premises, we depart from the reasoning of the intermediate appellate court in construing the effect of CL § 7–203.

 It is our view that the legislative intent in enacting CL § 7 –203 was not to change the elements of the crime of unauthorized use from those that existed immediately previous to the recodification. In fact, the Legislature said just that several times in the course of enacting the recodification. In enacting Chapter 26 of the Acts of 2002, the Legislature stated that "it is the intention of the General Assembly that, except as expressly provided in this Act, this Act shall be construed as a nonsubstantive revision, and may not otherwise be construed to render any substantive change in the criminal law of the State." Section 13, Chapter 26 of the Acts of 2002. As adopted, Chapter 26 of the Acts of 2002, included also the Revisor's note to CL § 7–203 and the Revisor's note to the

Chapter.[4] Conversely, nowhere in CL § 7–203 or in all of Chapter 26 of the Acts of 2002, did the Legislature indicate an intent to abrogate the extensive pre-existing case law interpreting the previous unauthorized use statute.

In *Kaczorowski v. Mayor and City Council of Baltimore,* 309 Md. 505, 525 A.2d 628 (1987) we stated, in response to a plea that we adhere blindly to a plain meaning approach to a statute:

> [D]espite Kaczorowski's pleas that we examine the trees so closely that we do not see the forest, the plain-meaning rule does not force us to read legislative provisions in rote fashion and in isolation. What we are engaged in is the divination of legislative purpose or goal. Indeed, as we have explained, the plain-meaning rule is not a complete, all-sufficient rule for ascertaining a legislative intention. The meaning of the plainest language is controlled by the context in which it appears. The aim or policy of the legislation, against which we measure the words used, is not drawn out of the air; it is evinced in the language of the statute as read in the light of other external manifestations of that purpose. Or as Justice Holmes once put it, "the general purpose is a more important aid to the meaning than any rule which grammar or formal logic may lay down."
>
> . . .
>
> When we pursue the context of statutory language, we are not limited to the words of the statute as they are printed in the Annotated Code. We may and often must consider other "external manifestations" or "persuasive evidence," including a bill's title and function paragraphs, amendments that occurred as it passed through the legislature, its relationship to earlier and subsequent legislation, and other material that fairly bears on the fundamental issue of legislative purpose or goal, which becomes the

---

4. See also the Fiscal Note to H.B. 11 and THE 90 DAY REPORT—A REVIEW OF LEGISLATION IN THE 2002 SESSION, E–1 (2002).

context within which we read the particular language before us in a given case.

Sometimes the language in question will be so clearly consistent with apparent purpose (and not productive of any absurd result) that further research will be unnecessary. But on other occasions much more extensive inquiry will be required.... [We] search for legislative purpose or meaning ... the legislative scheme. We identif[y] that scheme or purpose after an extensive review of the context ... [including], among other things, a bill request form ..., prior legislation ..., a legislative committee report ..., a bill title ..., related statutes ..., and amendments to the bill.

[L]egislative purpose is critical, that purpose must be discerned in light of context, and ... statutes are to be construed reasonably with reference to the purpose to be accomplished. The purpose, in short, determined in light of the statute's context, is the key. And that purpose becomes the context within which we apply the plain-meaning rule. Thus results that are unreasonable, illogical or inconsistent with common sense should be avoided with the real legislative intention prevailing over the intention indicated by the literal meaning.

*Kaczorowski,* 309 Md. at 514–16, 525 A.2d at 632–34 (internal citations omitted).

The Court of Special Appeals's reading of CL § 7–203 leaves portions of the statutory language superfluous and illogical. The intermediate appellate court's interpretation would require that the prosecution prove an entry on the premises and either a taking of certain property from the premises or a taking of the property out of the custody or use of the person whose premises was entered. We are unable to conjure a realistic scenario where a person would do one, but not the other. At oral argument before us, Petitioner's counsel advanced several hypotheticals in an effort to meet that challenge, but without ultimate persuasive effect. Allen's first hypothetical imagined a defendant moving an owner's tractor from one spot on the owner's land to another. The second scenario, though no more convincing, wins points for creativi-

ty. In it, a defendant takes an owner's sheep across the owner's property to the border adjoining defendant's land to shear it, thus depriving the landowner of the use of the sheep. Finally, defense counsel imagined a situation where a defendant took an owner's boat and operated it upon the owner's private lake; thus, while not removing the boat from the owner's property, denied the owner of the boat's use. We deem illogical the notion that the Legislature would amend so significantly the prior crime of unauthorized use so as sweep up these hypotheticals, while ignoring any situation where a defendant steals property not on the owner's premises,[5] thus rendering, under the Court of Special Appeals's interpretation of the statute, the second part thereof, superfluous. We shall not hew to a plain language approach that beggars common sense. *Frost v. State*, 336 Md. 125, 137, 647 A.2d 106, 112 (1994). Moreover, constructions of statutes should not render any clause or phrase surplusage, superfluous, meaningless, or nugatory. *Dep't of Health & Mental Hygiene v. Kelly*, 397 Md. 399, 420, 918 A.2d 470, 482 (2007).

We hold that the Legislature in 2002 did not change the elements of the crime of unauthorized use when it recodified the former statute as CL § 7–203.

### B.

Having resolved the proper interpretation of CL § 7–203, we address whether the evidence of record, and any reasonable inferences able to be drawn therefrom, were sufficient to convict Allen of the crime of unauthorized use. We conclude that the evidence sufficiently supported his conviction.

As noted above, we review a challenge to the sufficiency of the evidence in a jury trial by determining whether the evidence, viewed in a light most favorable to the prosecu-

---

**5.** Very realistic examples of this kind of action abound. For example, cars, boats, and other vehicles are taken from public property, such as streets, or from third party private property, such as marinas or storage yards, on a daily basis.

tion, supported the conviction of Allen, such that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Rivers v. State,* 393 Md. 569, 580, 903 A.2d 908, 914 (2006) (citing *State v. Smith,* 374 Md. 527, 533, 823 A.2d 664, 668 (2003)). It is not the province of an appellate court to retry the case; rather, we review the evidence and all inferences in a light most favorable to the State. *Id.,* 393 Md. at 578–81, 903 A.2d at 914–15 (citing *Hackley v. State,* 389 Md. 387, 389, 885 A.2d 816, 817 (2005); *State v. Albrecht,* 336 Md. 475, 478, 649 A.2d 336, 337 (1994)).

Petitioner argues that the evidence was legally insufficient for two reasons. First, he argues that the State offered no evidence placing him at the Virginia car dealership, and thus no evidence that he removed the Hummer from the dealership. Second, he argues that the State failed to prove that, when found behind the wheel of the stolen vehicle in Maryland, he knew that the Hummer was stolen. Allen notes that a month passed between the time of its disappearance and its reappearance in the possession of Petitioner and the vehicle was transported into Maryland from Virginia. He submits that this time and distance separation makes any inference unsustainable that he removed the Hummer from the Virginia dealership or knew the vehicle was stolen merely because he was found later driving it in Maryland. As Allen correctly points out, "[t]he term 'recent,' when used in connection with recently stolen goods, is a relative term, and its meaning as applied to a given case will vary with the circumstances of the case." *Butz v. State,* 221 Md. 68, 77, 156 A.2d 423, 428 (1959). We conclude, without difficulty, however, that a one month gap, as a matter of law, does not break significantly the permissible inferential chain from the initial disappearance of stolen goods from the premises to the discovery of Allen in possession of the goods. Indeed, this Court and the Court of Special Appeals have sustained such an inferential chain concerning far more motile and inconspicuous goods where disappearance and reappearance occurred in comparable or more lengthy time frames. *See Cason v. State,* 230 Md. 356, 358–59, 187 A.2d 103, 104–05 (1963) (transistor radio: four months);

*Butz,* 221 Md. at 76–77, 156 A.2d at 427–28 (jewelry box: two weeks); *Wynn v. State,* 117 Md.App. 133, 170, 699 A.2d 512, 530 (1997), *abrogated on other grounds by Wynn v. State,* 351 Md. 307, 718 A.2d 588 (1998) (camcorder, antique watch, gym bag: ten months); *Jordan v. State,* 24 Md.App. 267, 275, 330 A.2d 496, 501–02 (1975) (guns: ten months); *Anglin v. State,* 1 Md.App. 85, 94, 227 A.2d 364, 368, *cert denied,* 246 Md. 755 (1967) (jewelry box, earrings, and miscellaneous jewelry: one month and six months). We further conclude that a reasonable jury could draw this inference despite Allen's testimony that he merely borrowed the car from Robinson. As noted in the jury instructions, the jury was free to credit (or not) his statements in light of his failure to produce Robinson as a witness.[6] Petitioner's possession of the Hummer and keys, the recent time frame of the salient events, and his inability to corroborate his testimony with Robinson's testimony were sufficient for a rational jury properly to draw the inference that Allen committed unauthorized use of an automobile under CL § 7–203. Indeed, as instructed by the trial court, the jury merely could have considered the evidence in light of its collective "own experiences" and drawn "reasonable inferences or conclusions from the evidence [as] justified by common sense and [their] own experiences."

JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED; COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY PETITIONER.

Chief Judge BELL joins the judgment only.

---

**6.** Part of the Court of Special Appeals's reasoning regarding the sufficiency question relied upon the testimony given by Officer Caver that "upon being stopped ..., [Allen] stated, without prompting, that the vehicle was not stolen and that it belonged to his brother." *Allen v. State,* 171 Md.App. 544, 562, 911 A.2d 453, 463 (2006). This evidence, however, was excluded by the trial court. Nonetheless, a reasonable jury could convict Allen based on the permitted inference from his possession of recently stolen property.