HOTTEN, J.,
dissenting, in which GREENE and WATTS, JJ., join.
I respectfully dissent from the majority opinion. I would hold that the evidence at trial, when viewed in a light most favorable to the State, was sufficient to satisfy § 3-602.1 of the Criminal Law Article (“Crim. Law”), which was not unconstitutionally vague as applied to Ms. Hall (“Petitioner”).
I. The Evidence at Trial was Sufficient to Sustain Petitioner’s Conviction.
Crim. Law § 3-602.1 required that Petitioner’s conduct “created a ‘substantial risk of harm’ to A.’s physical health and that her conduct was such that a reasonable parent under the circumstances would not have engaged in.” Maj. Op. at 336, 139 A.3d at 946. Here, notwithstanding the statutory acknowledgement that “a thirteen year-old is ... an appropriate caretaker for a child under eight years of age[,]” Maj. Op. at 336, 139 A.3d at 946, the direct and circumstantial evidence before the court was sufficient to establish that Petitioner knew D. was an inappropriate caretaker for A. Allen v. State, 402 Md. 59, 76-77, 935 A.2d 421, 431 (2007) (“[W]e review a challenge to the sufficiency of the evidence in a jury trial by determining whether the evidence, viewed in a light most favorable to the prosecution, supported the conviction ..., such that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.”). Thus, Petitioner’s decision to leave A. with D. overnight, when she was unreachable until late the following morning, was not “objectively reasonable” as proffered by the majority. Maj. Op. at 335, 139 A.3d at 945.
D.’s testimony revealed that A. had a propensity to escape from home unattended, and, the social worker, Ms. Wannall established that Petitioner was present for at least one such *340 incident where A. had escaped from the home and entered the truck of a nearby postal worker. Ms. Wannall further described a typical episode of A’s rambunctious behavior in Petitioner’s presence, and opined that A. “ran rampant[,]” “was very, very difficult to control[,]” and was “very active.” Regarding direct evidence of Petitioner’s knowledge, Ms. Wannall testified that a recurring theme during her conversations with Petitioner was the appropriateness of D. caring for A. Notably, Ms. Wannall raised this issue with Petitioner just nine days prior to the night in question, and Petitioner had agreed that “[A.] was too difficult for [D.] to watch[,]” and that she would no longer leave A. under the supervision of D.
The majority proffers that the Court of Specials Appeals’ reliance on this agreement was misplaced because “[t]he main thrust of Ms. Wannall’s concern regarding D. and her supervision of A. was D.’s need to ‘spend more time on her studies’ and ‘not have as many responsibilities in the home.’ ” Maj. Op. at 336, 139 A.3d at 946. Although the majority’s interpretation of Ms. Wannall’s concern is certainly reasonable, nothing in the record indicates that Ms. Wannall’s concerns were limited to the amount of responsibility placed on D. Thus, where this Court is required to “review the evidence and all inferences in a light most favorable to the State[,]” Ms. Wannall’s concern should be viewed as pertaining to the wellbeing of both A. and D. Allen, 402 Md. at 77, 935 A.2d at 431. Petitioner’s agreement with Ms. Wannall was, therefore, probative of Petitioner’s knowledge that D. was incapable of providing adequate care for A.
Notwithstanding Petitioner’s knowledge that D. was ill-suited to supervise A., Petitioner advised her children that she “would be right back[,]” and then left A. under D.’s supervision on the night of February 24, 2012. Petitioner did not tell her children where she could be found, did not tell them when she would be back, and made no efforts to reconnect with her children until after 10am the following morning. Furthermore, despite giving D. a cell phone to use in the event of an emergency,[1] Petitioner was entirely unavailable, as her cell *341 phone went straight to voicemail during the numerous unsuccessful attempts by D., law enforcement, and the social worker to contact her after A. was found unattended in the middle of a six lane roadway.
The factfinder could have reasonably concluded “that [Petitioner’s] conduct ... created a ‘substantial risk of harm’ to A.’s physical health and that her conduct was such that a reasonable parent under the circumstances would not have engaged in.” Maj. Op. at 336, 139 A.3d at 946. The majority correctly observes that 20/20 hindsight should not be utilized to hold a parent criminally liable for “failure to realize an ideal level of supervisory attention” or to safeguard against a “freak accident.” Maj. Op. at 334, 332, 139 A.3d at 945, 944 (quoting State v. McLeod, 165 Ohio App.3d 434, 846 N.E.2d 915, 918 (2006), and David Pimentel, Criminal Child Neglect and the “Free Range Kid”: Is Overprotective Parenting the New Standard of Care?, 2012 Utah L. Rev. 947, 981-83). However, the evidence that Petitioner knew A. was a very difficult child, coupled with her complete unavailability, distinguishes this case from one where an otherwise reasonable parenting decision is judged with the benefit of hindsight.
The factfinder could have reasonably concluded — in light of Petitioner’s knowledge concerning A.’s behavior — that Petitioner’s conduct was not that of a reasonable parent under the circumstances. Furthermore, A. was subjected to a “substantial risk of harm” from the moment he was left with an inadequate caregiver, while Petitioner was unreachable by her children, police, and the social worker. I would therefore hold that the evidence was sufficient to sustain Petitioner’s conviction.
II. § 3-602.1 is Constitutional As Applied to Petitioner
Having addressed Petitioner’s sufficiency argument, I would further hold that Crim. Law § 3-602.1 was not unconstitutionally vague as applied to Petitioner.[2]
*342 The void-for-vagueness doctrine grows out of the right to due process under the Fourteenth Amendment to the United States Constitution, and generally requires that a criminal statute satisfy two criteria. Ayers v. State, 335 Md. 602, 623-24, 645 A.2d 22, 32 (1994). The first criteria is notice, requiring that “persons of ordinary intelligence and experience be afforded a reasonable opportunity to know what is prohibited, so that they may govern their behavior accordingly.” Bowers v. State, 283 Md. 115, 121, 389 A.2d 341, 345 (1978). This requirement “is grounded on the assumption that one should be free to choose between lawful and unlawful conduct.” Id.
The second criteria requires that the statute “provide legally fixed standards and adequate guidelines for police, judicial officers, triers of fact and others whose obligation it is to enforce, apply and administer the penal laws.” Id. This Court has observed that “[a] vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an Ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application.” Id. at 121-22, 389 A.2d at 345 (quoting Grayned v. City of Rockford, 408 U.S. 104, 108-109, 92 S.Ct. 2294, 2299, 33 L.Ed.2d 222 (1972) accord, Papachristou v. City of Jacksonville, 405 U.S. 156, 170, 92 S.Ct. 839, 843, 31 L.Ed.2d 110 (1972)).
Outside of the First Amendment context, vagueness is generally considered “as applied to the facts of the particular case[,]” and the court will determine whether the complaining party could have reasonably foreseen that their conduct was subject to the statute, and/or whether the statute led to arbitrary enforcement based on the facts before the court.[3] *343 Ayers, 385 Md. at 624, 645 A.2d at 33 (quoting Bowers, 283 Md. at 121, 389 A.2d at 346). Thus, Crim. Law § 3-602.1’s definition of “neglect” — the “intentional failure to provide necessary assistance and resources for the physical needs ... of a minor that creates a substantial risk of harm to the minor’s physical health[ ]” — must satisfy each of these prongs.[4] Crim. Law § 3 — 602.1(a)(5)(ii).
*344 In determining whether the child neglect statute provided Petitioner with adequate notice of the prohibited conduct, the court examines whether that language can be “fairly ascertained by reference to judicial determinations, the common law, dictionaries, treatises or even the words themselves, if they possess common and generally accepted meaning.” Galloway v. State, 365 Md. 599, 615, 781 A.2d 851, 860 (2001) (citation omitted) (emphasis in original). If, after looking to the above sources, there is still a constitutional question about notice, the court may also employ a narrowing construction to avoid constitutional concerns. See Id. at 619, 781 A.2d at 862 (“In short, even if arguably otherwise deficient, [the challenged statute] is salvageable because we shall employ a limiting construction to the statute to ensure that it provides a standard of conduct____”); see also Schochet v. State, 320 Md. 714, 729, 580 A.2d 176, 183 (1990) (“General Statutes ..., which if given their broadest and most encompassing meaning, give rise to constitutional questions, have regularly been the subject of narrowing constructions so as to avoid the constitutional issues[J”). Lastly, in determining whether an otherwise vague statute is salvageable, the court considers the existence of inherent limitations in the statute, along with any scienter requirement that further provides notice of the prohibited conduct. Galloway, 365 Md. at 619, 781 A.2d at 863. In light of these factors, the meaning of the terms in Crim. Law § 3-602.1 could be fairly ascertained by Petitioner, thus providing notice of the prohibited conduct.
Crim. Law § 3-602.1(a)(5)(ii) prohibits the “intentional failure to provide necessary assistance and resources____” (emphasis added). Intent is frequently used as the required mens rea in Maryland’s penal statutes. In the context of second degree murder — requiring an “[i]ntent to commit grievous bodily harm” — this Court has noted that the intent requirement may be satisfied where “the defendant acts -without provocation, justification or excuse, and could or should have *345 foreseen that the consequences of his or her conduct might result in death to another person.” Thornton v. State, 397 Md. 704, 714-15, 919 A.2d 678, 684 (2007) (citation omitted) (emphasis added). Regarding the intent to cause serious physical injury required for first degree assault, “a jury may infer the necessary intent from an individual’s conduct and the surrounding circumstances, whether or not the victim suffers such an injury.” Chilcoat v. State, 155 Md.App. 394, 403, 843 A.2d 240, 246 (2004) (citing Ford v. State, 330 Md. 682, 703, 625 A.2d 984, 994 (1993)). “Also, the jury may ‘infer that one intends the natural and probable consequences of his act.’ ” Id. (quoting Ford, 330 Md. at 704, 625 A.2d at 994).
In light of the precedent interpreting “intent” in other criminal statutes, Petitioner would have been placed on notice that Crim. Law § 3-602.1 may be satisfied where a defendant could or should have foreseen that his or her conduct would probably result in the “failure to provide necessary assistance and resources for the physical needs of a minor____”[5] Crim. Law § 3-602.1(a)(5)(ii). This specific intent requirement weighs against a holding that Crim. Law § 3-602.1 punishes parents or caregivers without warning, see Williams v. State, 329 Md. 1, 9, 616 A.2d 1275, 1279 (1992) (“ ‘[T]he requirement of a specific intent to do a prohibited act ... relieve[s] the statute of the objection that it punishes without warning an offense of which the accused was unaware.’ ”) (quoting Screws v. United States, 325 U.S. 91, 101-02, 65 S.Ct. 1031, 1035, 89 L.Ed. 1495 (1945) (plurality opinion)), and also distinguishes the present case from several out-of-state cases where child neglect statutes have been deemed unconstitutionally vague. *346 Cf. Commonwealth v. Carter, 21 Va.App. 150, 152-53, 462 S.E.2d 582 (1995) (holding that Virginia Code § 40.1-103— making it a crime for “any person employing or having custody of any child ... willfully or negligently to cause or permit such child to be placed in a situation that its life, health or morals may be endangered ... ” — was unconstitutionally vague) (emphasis omitted); Schriver, 207 Conn, at 461, 542 A.2d 686 (noting that a prohibition on “any act likely to impair the health or morals of any child[ ]” “provides no guidance to potential violators, police officers or juries, particularly because specific intent is not an element of the offense____”); Alsager v. Dist. Court of Polk Cnty. Iowa (Juvenile Div.), 406 F.Supp. 10 (S.D.Iowa 1975) aff'd sub nom. Alsager v. Dist. Court of Polk Cnty., Iowa, 545 F.2d 1137 (8th Cir.1976) (holding that Iowa Code § 232.41 — providing that the court may terminate a parental relationship where “the parents have substantially and continuously or repeatedly refused to give the child necessary parental care and protection” — was unconstitutionally vague.).
Regarding “intentional failure to provide necessary assistance and resources for the physical needs ... of a minor ... [,]” Crim. Law § 3-602.1 (emphasis added), the term “physical needs,” will determine “necessary assistance and resources” in a given case. The term “needs,” when used as a noun, is defined as the “physiological or psychological requirements for the well-being of an organism.” M. WEBSTER’S NEW COLLEGIATE DICTIONARY 829 (11th ed. 2008). Thus, the term “physical needs” simply excludes the “psychological requirements,” and includes basic requirements for physical well-being of a child, like shelter, safety, food, supervision, clothing, water or sanitation.[6]
The common understanding of “physical needs” is confirmed by the General Assembly’s use of similar terms in Maryland’s elder abuse and neglect statute, Crim. Law § 3-604(a)(7)(i). In addition, case law interpreting the term “neglect” in Mary *347 land’s Child In Need of Assistance statute, Md. Code (2006 Repl. Vol. 2013), § 3-801 (s) of the Courts and Judicial Proceedings (“Cts. & Jud. Proc.”) Article, provides additional notice of what is encompassed by the term “neglect” in the case at bar.
Similar to the child neglect statute, Crim. Law § 3-604(a)(7)(i) defines “neglect” of a vulnerable adult as the: intentional failure to provide necessary assistance and resources for the physical needs of a vulnerable adult, including:
1. food;
2. clothing;
3. toileting;
4. essential medical treatment;
5. shelter; or
6. supervision.
Although Crim. Law § 3-602.1 contains no specific examples of what is included amongst the “physical needs of a minor,” the specific examples of “the physical needs of a vulnerable adult” confirm the types of essentials that are encompassed by the common understanding of “physical needs.” According to Petitioner, the General Assembly’s decision to define what is necessary for the physical needs and resources of a vulnerable adult also indicates that the term “necessary assistance and resources for the physical needs” is a vague term. However, several out-of-state courts, in addressing vagueness challenges, have looked to definitions provided in related statutes to determine whether there is notice of a term’s meaning in the law at issue. See State v. Hagan, 387 So.2d 943, 945 (Fla.1980) (“In the absence of a statutory definition, resort may be had to case law or related statutory provisions which define the term, and where a statute does not specifically define words of common usage, such words are construed in their plain and ordinary sense.”); Com. v. Kenney, 449 Mass. 840, 851, 874 N.E.2d 1089 (2007) (“[A] law is not vague [in the constitutional sense] if its meaning is ascertainable by reference to similar or related statutes ... if the questioned [term *348 has] a commonly understood meaning [or if] even a vague statute may be made constitutionally definite by giving it a reasonable construction.”); People v. Kassover, 24 Misc.2d 1080, 205 N.Y.S.2d 428, 481 (N.Y.Sp.Sess.1960) (“The fact that language in a statute or regulation may require reference to ‘definitions’ in that or in a related statute, does not necessarily render such statute or regulation vague or indefinite.”); State v. Winslow, 134 N.H. 398, 400, 593 A.2d 238 (1991) (“[T]he necessary specificity, however, need not be contained in the statute itself, but rather, the statute in question may be read in the context of related statutes, prior decisions, or generally accepted usage.”).
There is also good reason for the General Assembly to paint with a broader brush when drafting the child abuse statute. A “vulnerable adult” is defined in terms of a condition — “an adult who lacks the physical or mental capacity to provide for the adult’s daily needs[,]” Crim. Law § 3-604(a)(10) — so there is likely a somewhat finite understanding of what is required for the physical needs of such a person. To the contrary, a minor (anyone under the age of 18) is defined by reference to age, and there are minors within this range that require drastically different levels/types of assistance to meet their physical needs. Therefore, the term “necessary assistance and resources for the physical needs” is susceptible to a definition with concrete examples in Crim. Law § 3-604, but not in Crim. Law § 3-602.1.
The amendments made to S.B. 178 (Md. 2011), which ultimately created Crim. Law § 3-602.1, reveal that the General Assembly recognized the difficulty involved in drafting legislation comprehensive enough to encompass all that is necessary for the physical needs of a minor, as compared to a vulnerable adult. As S.B. 178 was originally introduced in the Senate, “neglect” was defined in the exact same manner as the vulnerable adult statute: “the intentional failure to provide necessary assistance and resources for the physical needs of a minor, including:”
(I) Food
*349 (II) Clothing
(III) Toileting
(IV) Essential Medical treatment
(V) Shelter; or
(VI) Supervision
S.B. 178 (as introduced and first read in the Senate, January-24, 2011) (capitalization omitted). However, S.B. 178 was subsequently approved with amendments by the Senate Judicial Proceedings Committee, which deleted the “laundry list (food, clothing, toileting, essential medical treatment, shelter or, or supervision^,]” and instead “require[d] that the failure to provide creates a substantial risk of harm to the minor’s physical or mental health[.]” SENATE JUDICIAL PROCEEDINGS COMMITTEE: FLOOR REPORT, S.B. 178 at 1 (Md. 2011). This comprehensive definition of “neglect” in S.B. 178 was ultimately signed into law, and the decision to deviate from the definition of “neglect” in the vulnerable adult statute evidences the General Assembly’s intent to encompass a range of conduct that was not limited by the “laundry list” used in the vulnerable adult statute. See Williams, 329 Md. at 13, 616 A.2d at 1280-81 (noting that “all broad laws attempting to punish a range of criminal conduct” are not “susceptible to vagueness challenges insofar as they could be drawn more narrowly and precisely.”).
In addition to the vulnerable adult statute, “neglect” is also defined in a similar fashion in the Maryland Child In Need of Assistance (“CINA”) statute. Cts. & Jud. Proc. § 3-801(s). Petitioner contends that the body of law addressing “neglect” in CINA cases is of limited relevance because Crim. Law § 3-602.1 is a criminal statute designed to punish caregivers, whereas a CINA proceeding is a civil proceeding that serves to protect minors. Petitioner also notes that the language of the statutes are different. It is true that a criminal proceeding serves an interest not necessarily served by a CINA proceeding because “the legislative intention underlying a CINA proceeding is not to punish the parent[.]” In re Blessen H., 392 Md. 684, 707-09, 898 A.2d 980, 994 (2006) *350 (quoting In re John P. and Thomas P., 311 Md. 700-709, 537 A.2d 263, 268 (1988)). Furthermore, while the void-for-vagueness doctrine applies to both criminal and civil statutes, the Supreme Court has noted that the U.S. Constitution is more tolerant of vagueness in civil enactments than criminal enactments. Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 498-99, 102 S.Ct. 1186, 1193, 71 L.Ed.2d 362 (1982) (“The Court has also expressed greater tolerance of enactments with civil rather than criminal penalties because the consequences of imprecision are qualitatively less severe.”) (footnote omitted).
Notwithstanding these differences, a determination that a child is a CINA and a finding of guilt under Crim. Law § 3-602.1 both serve the legitimate State interest of protecting Maryland children. Additionally, although the results of the two proceedings will be different, each constitutes an interference with the fundamental constitutional right of a parent to raise their child how they see fit. In Re Yve S., 373 Md. 551, 565, 819 A.2d 1030, 1038-39 (2003) (discussing the fundamental rights of a parent in relation to their child). Thus, notice of the conduct sufficient to constitute neglect under the CINA statute is certainly relevant in providing notice of the conduct comprising criminal neglect, as the statutes are related in both purpose and result.
CINA refers to “a child who requires court intervention because: (1) [t]he child has been abused, has been neglected, has a developmental disability, or has a mental disorder; and (2) [t]he child’s parents, guardian, or custodian are unable or unwilling to give proper care and attention to the child and the child’s needs.” Cts. & Jud. Proc. § 3-801(f). Cts. & Jud. Proc. § 3 — 801(s) defines “neglect” for CINA purposes as:
the leaving of a child unattended or other failure to give proper care and attention to a child by any parent or individual who has permanent or temporary care or custody or responsibility for supervision of the child under circumstances that indicate:
*351 (1) That the child’s health or welfare is harmed or placed at substantial risk of harm; or
(2) That the child has suffered mental injury or been placed at substantial risk of mental injury.
“[Pjroper care and attention” is certainly a more nebulous standard than “necessary assistance and resources for the physical needs of the child,” yet this definition of “neglect” has been used in Cts. & Jud. Proc. § 3-801(s) since 2001, S.B. 660 (Md. 2001), and has never been declared unconstitutionally vague in a reported opinion by this Court or the Court of Special Appeals.[7]
Additionally, although not determinative on this issue of vagueness in the case at bar, there is a multitude of cases applying the CINA definition of “neglect,” or discussing neglect in the CINA context. See In re Priscilla B., 214 Md.App. 600, 631-32, 78 A.3d 500, 519-20 (2013) (discussing multiple factors supporting a trial court’s determination that Priscilla was a CINA on the basis of neglect, including the condition of the home, Priscilla’s appearance, and the lack of attention to Priscilla’s medical needs); Doe v. Allegany Cty. Dep’t of Soc. Servs., 205 Md.App. 47, 52, 43 A.3d 1071, 1074 (2012) (finding that a seventeen-year-old boy with paralysis from the waist down had been neglected where his adoptive parents had refused to allow him back in their house, thus depriving him of the medical assistance he required.); In re Adoption of Cadence B., 417 Md. 146, 150, 9 A.3d 14, 17 (2010) (discussing neglect where the parent had smoked drugs in the presence of the child determined to be a CINA). These cases provide additional notice of the point at which the State will interfere with ordinarily protected parenting decisions, thereby reinforcing the conclusion that Crim. Law § 3-602.1’s definition of “neglect” is not unconstitutionally vague.
*352 Regarding the child neglect statute, the “the necessary assistance and resources for the physical needs of a minor” depends on what “is needed or required for the physical well being” of the particular child, who may be seventeen, or in the case of A., three. See M. WEBSTER’S NEW COLLEGIATE DICTIONARY at 828 (defining “necessary” as that which is “absolutely needed” or “required”). However, there is no constitutional problem with this fact-intensive standard, as the vagueness doctrine of the Fourteenth Amendment:
is not a principle designed to convert into a constitutional dilemma the practical difficulties in drawing criminal statutes both general enough to take into account a variety of human conduct and sufficiently specific to provide fair warning that certain kinds of conduct are prohibited.
Eanes v. State, 318 Md. 436, 459, 569 A.2d 604, 615 (1990) (quoting Colten v. Kentucky, 407 U.S. 104, 110, 92 S.Ct. 1953, 1957, 32 L.Ed.2d 584 (1972)). This Court is only concerned with whether a person “of common intelligence” must “guess at [the statute’s] meaning,” and a person of common intelligence need not guess at what is necessary, or required, for the physical needs of the child under their supervision. Id. (quoting Broadrick v. Oklahoma, 413 U.S. 601, 607, 93 S.Ct. 2908, 2913, 37 L.Ed.2d 830 (1973)).
Regarding the requirement that the failure to provide necessary assistance or resources “creates a substantial risk of harm to the minor’s physical healthf,]” “substantial risk” has a commonly accepted meaning and appears throughout Maryland’s penal statutes. Cf. State v. Mahurin, 799 S.W.2d 840, 842 (Mo.1990) (holding that Missouri’s child endangerment statute provided notice of the prohibited act, and reasoning that “[t]he words ‘substantial risk’ have a plain and ordinary meaning cognizable by a person of ordinary intelligence.”); see, e.g., Crim. Law § 3-204(a)(l) (reckless endangerment); Crim. Law § 3-202 (assault in the first degree) Crim. Law § 3-1001(c) (threats to commit crimes of violence); Crim. Law § 3-201(d) (defining “serious physical injury” and “physical injury that ... creates a substantial risk of death[.]”). Whether a substantial risk has been created involves “an *353 objective assessment of the degree of risk” created by the failure to provide necessary assistance and resources to the minor. Cf. Minor v. State, 326 Md. 436, 442, 605 A.2d 138, 141 (1992) (Noting that, whether the defendant has created the “substantial risk of death or serious physical injury” required under the reckless endangerment statute, “entails an objective assessment of the degree of risk presented by the defendant’s reckless conduct.”).
Regarding this objective assessment, the majority appropriately borrows from the reckless endangerment statute, Crim. Law § 3-204(a)(l), to note that the creation of a substantial risk of harm “is measured by that which a reasonable person would have done in the circumstances.” Maj. Op. at 329-32, 139 A.3d at 942-44 (discussing Jones v. State, 357 Md. 408, 427, 745 A.2d 396, 406 (2000), and Williams v. State, 100 Md.App. 468, 481, 641 A.2d 990, 996 (1994)). This construction of Crim. Law § 3-602.1 — imposing a measure of objective reasonableness on the actus reus of “creation of a substantial risk” — allows a member of society to choose between lawful and unlawful conduct by adherence to a familiar standard of conduct. This standard also provides a safeguard against the use of hindsight to prosecute caregivers in scenarios where a minimum risk of harm materializes, notwithstanding the reasonableness of the caregiver’s actions.
In light of the above, I would hold that the standard of conduct prescribed by Crim. Law § 3-602.1 could be fairly understood by Petitioner. As discussed in further detail in Section I, swpra, Petitioner was fully aware that A. was a difficult child, and conceded that it was inappropriate for D. to supervise A. Petitioner would therefore have been placed on notice that leaving A. with D. overnight, without any way for D. to contact Petitioner, would likely deprive A. of the necessities for his physical well-being, and that doing so was not “objectively reasonable[.]” Maj. Op. at 335, 139 A.3d at 945.
I would further hold that Crim. Law § 3-602.1 provided a fixed standard that, from the perspective of law enforcement, was clearly applicable to Petitioner’s conduct. According to *354 Petitioner, the fact that Officer Walsh, after finding A. at the playground without supervision on February 22, 2012, returned A. home with only D. and M. present, “illustrates the lack of guidance the statute provides to law enforcement.”
To the contrary, I believe law enforcement’s actions were reflective of the scienter requirement in the child neglect statute. As discussed in detail above, Crim. Law § 3-602.1 required that Petitioner should have foreseen that her conduct would likely result in the “failure to provide necessary assistance and resources for the physical needs ... of a minor[.]” Crim. Law § 3 — 602.1(a)(5)(i). In light of this mens rea requirement, it is highly likely that law enforcement personnel, in this case Officer Walsh, would not know that a crime had been committed until more circumstances regarding an individual case were ascertained. This is because a child may be found in a situation where, despite the absence of criminal neglect, there was a substantial risk to the child’s physical health. Therefore, it is entirely reasonable that Officer Walsh, when discovering A. at the park, would not know that a crime has been committed until he became aware of the circumstances that reflected a lack of child supervision. Accordingly, there was no reason to believe that a law enforcement officer who returned A. to D.’s supervision, and waited to consult with social workers before pursuing charges under Crim. Law § 3-602.1, was left without “adequate guidelines” for enforcement of the statute. Officer Walsh’s actions simply reflect that Crim. Law § 3-602.1 insulates innocent parenting mistakes from criminal liability.
In summation, I would hold that Crim. Law § 3-602.1 was not unconstitutionally vague as applied to Petitioner, and that the evidence was sufficient to sustain Petitioner’s conviction.
GREENE and WATTS, JJ., authorized me to state they join in this opinion.

. The cell phone provided contained a number to reach Petitioner.

. The vagueness challenge is addressed in this dissent because affirmance of the judgment of the Court of Special Appeals would require *342 resolution of this constitutional issue. Cf. VNA Hospice of Maryland v. Dep't of Health & Mental Hygiene, 406 Md. 584, 604, 961 A.2d 557, 569 (2008) (discussing this Court's preference " 'to decide constitutional issues only when necessary.' ") (citations omitted).

. In contrast to a challenge for vagueness as-applied, a facial challenge permits the complaining party to raise the issue of vagueness as to hypothetical persons not before the court, "[a]nd if the law is found *343 deficient in one of these respects, it may not be applied to the [complainant] either[.]” Coates v. City of Cincinnati, 402 U.S. 611, 619-20, 91 S.Ct. 1686, 1691, 29 L.Ed.2d 214 (1971). Several Federal Circuits, including the Fourth Circuit, and several State Courts, have expressly prohibited a facial attack in the absence of a concern for First Amendment liberties. United States v. Klecker, 348 F.3d 69, 71 (4th Cir.2003); see also United States v. Sun, 278 F.3d 302, 309 (4th Cir.2002); Gallagher v. City of Clayton, 699 F.3d 1013, 1021 (8th Cir.2012) ("It is well established that vagueness challenges to statutes which do not involve First Amendment freedoms must be examined in light of the facts of the case at hand.”); United States v. Other Med., 596 F.3d 677, 682 (9th Cir.2010) ("[Vjagueness challenges to statutes that do not involve the First Amendment violations must be examined as applied to the defendant.”); In re Dependency of M.M., 174 Wash.App. 1068 (2013) ("It is well-settled law that a vagueness challenge to a statute that does not involve First Amendment rights must be decided as applied to the particular facts of a case. As a result, when a vagueness challenge to a statute does not involve First Amendment interests, a facial challenge to the statute will not be considered.”) (footnote omitted); People v. Einoder, 209 Ill.2d 443, 448, 283 Ill.Dec. 551, 808 N.E.2d 517 (2004) ("A defendant may not challenge the facial vagueness of a statute that does not implicate first amendment freedoms unless the statute 'is incapable of any valid application.’ ”); State v. Schriver, 207 Conn. 456, 461, 542 A.2d 686 (1988) (“For statutes that do not implicate the especially sensitive concerns embodied in the first amendment, we determine the constitutionality of a statute under attack for vagueness by considering its application to the facts at issue.”) (citation omitted).

. In discussing jury instructions, the parties agreed that the references to mental health in the definition of "neglect” would be removed. Thus, the instructions given by the court defined "neglect” as “the intentional failure to provide necessary assistant [(sic)] and resources for the physical needs of a minor that creates the substantial risk of harm to the minor’s physical health.” We are therefore solely concerned with neglect committed through "intentional failure to provide necessary assistance and resources for the physical needs of a minor that creates a substantial risk of harm to the minor’s physical healthf,]” because the State did not prosecute Petitioner under the portion of Crim. Law § 3-602.1 governing mental health. See Ayers, 335 Md. at 625, 645 A.2d at 33 ("[E]ven under the special standing rule applicable with regard to statutes involving First Amendment interests, a defen *344 dant may not raise a facial challenge to portions of a statute under which he or she was not convicted.”).

. At Petitioner’s trial, the court instructed the jury using the following explanation of "intent”:
Intent is a state of mind, and ordinarily cannot be proven directly because there is no way of looking into a person’s mind; therefore, a defense [(sic)] intent may be shown by surrounding circumstances. In determining the defendant’s intent, you may consider the defendant’s acts and statements, as well as surrounding circumstances. Further, you may, but are not required to, infer that a person ordinarily intends the natural and probably [(sic)] consequences of her acts and or omissions.

. The examples listed are not intended to be exhaustive.

. According to a committee note in S.B. 660, the definition of neglect was added to the CINA statute in 2001 "to coincide with the definition in [§ 5-701 of the Family Law Article] and reflects practice in this area of law.” The Family Law Article has used a definition of "neglect” similar to the one now used in the CINA statute since 1988. S.B. 708 (Md. 1987).